IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| SHAKEARA WARE, TRIPLE D, INC., and ENSEY LLC, individually, and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED PARCEL SERVICE, INC.; GENERAL ELECTRIC COMPANY; BOEING COMPANY<br><br>*Defendants*. | Case No.:   3:25-CV-720-RGJ<br><br><br><br>JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs Shakeara Ware, Triple D, Inc., and ENSEY LLC, individually and on behalf of the putative class of all similarly situated persons, sue Defendants United Parcel Service, Inc. ("UPS"), General Electric Company ("GE"), and Boeing Company ("Boeing"), and, based upon personal knowledge and on investigation of counsel and review of public documents and information, allege as follows:

**INTRODUCTION**

1. On November 4, 2025, at approximately 5:15 p.m., UPS MD-11 cargo aircraft taxied from UPS Worldport to the runway at Louisville Muhammad Ali International Airport, laden with 220,000 pounds of jet fuel for its scheduled flight to Hawaii.

2. As UPS MD-11 accelerated down the runway, its left wing burst into flames. The engine from the plane's flaming left wing fell off as UPS MD-11 lifted off the ground.

3. Although UPS MD-11 lifted off of runway 17R, it barely made it farther than that. It crashed into the ground and several offsite structures south of the airport

4. Multiple explosions, and massive plumes of fire and smoke burst from the plane and the structures it hit, causing multiple deaths, personal injuries, and massive property damage.

5. The remains of UPS MD-11 are now strewn across a half mile area. According to the NTSB, "there are a lot of different parts of this airplane in a lot of different places".

6. Plaintiffs, Shakeara Ware, Triple D, Inc., and Ensey LLC, along with numerous other class members, have had their lives and businesses turned upside down as a result of Defendants' crash of UPS MD-11.

7. Plaintiff, Shakeara Ware, was at home nearby as the crash and explosion of UPS MD-11 shook her home, toxic smoke and soot filled her lungs. After being released from shelter-in-place orders, she went to the emergency room for treatment of injuries from the crash of UPS MD-11.

8. Plaintiff, Triple D, Inc., was an automotive repair shop located in the path of the wreckage of UPS MD-11. The entire business, including but not limited to its machinery, personal property, customers' vehicles, and other assets were all destroyed as the result of the crash of UPS MS-11.

9. Plaintiff, ENSEY, LLC, owned real property located in the path of the wreckage of UPS MD-11, which is now subject to chemical contamination and significantly diminished value and inability to maintain rental income as the result of the crash of UPS MS-11.

10. Defendants' recklessness has upended the lives and livelihoods of Plaintiffs and numerous Kentuckians, who live with trauma, fear and uncertainty caused by Defendants' actions.

11. Plaintiffs bring this action on behalf of herself and the putative class to ensure that Defendants pay for their recklessness, and account for the consequences that Defendants have imposed on this community.

## PARTIES

12. Plaintiff, Shakeara Ware, is a citizen of Kentucky and lives in Jefferson County.

13. Plaintiff, Triple D, Inc., is a Kentucky Corporation in good standing, with its principal place of business located at 644 Phillips Lane, Louisville, Kentucky 40209, doing business at 4511 Knopp Avenue, Louisville, Kentucky 40213, and its registered agent being David Ensey, Jr., at 644 Phillips Lane, Louisville, Kentucky 40209.

14. Plaintiff, ENSEY, LLC, is a Kentucky Limited Liability Company in good standing, with its principal place of business located at 644 Phillips Lane, Louisville, Kentucky 40209, and a registered agent being David Ensey, Jr., at 644 Phillips Lane, Louisville, Kentucky 40209.

15. Defendant United Parcel Service, Inc. ("UPS") is a corporation duly organized and existing under and by virtue of the laws of the State of Delaware with its principal place of business located at 55 Glenlake Parkway, N.E., Atlanta, GA 30328.

16. Defendant General Electric Company ("GE") is a corporation duly organized and existing under and by virtue of the laws of the State of New York with its principal place of business located at 1 Neimann Way, Evendale Ohio 45215.

17. Defendant Boeing Company ("Boeing") is a corporation duly organized and existing under and by virtue of the laws of the State of Delaware with its principal place of business located at 929 Long Bridge Drive, Arlington, VA 22202. Boeing is the successor to McDonnell Douglas, who designed and manufactured UPS MD-11.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of

interest and costs. There are more than 100 Class Members, and Plaintiffs and many Class Members and Defendants are citizens of different states.

19. This Court has jurisdiction over each Defendant because they each operated their buesinesses in this District. Through their regular business operations in this District, Defendants intentionally and regularly availed themselves of the markets and jurisdiction in this District, conferring this Court with personal jurisdiction over each Defendant.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events and omissions giving rise to this action occurred in this District, and Defendants' operations in this District caused harm to Plaintiffs and Class Members in this District.

## STATEMENT OF FACTS

21. UPS MD-11 is owned and operated by Defendant UPS.

22. UPS MD-11 was manufactured in 1991 by Defendant Boeing, through its predecessor McDonnell Douglas Corp.

23. UPS MD-11 was originally designed and manufactured as an MD-2. UPS purchased the jet in 2006 and subsequently modified it to be an MD-11F cargo plane.

24. UPS MD-11 was powered by CF6 engines designed and manufactured by Defendant GE. Specifically, UPS MD-11 was equipped with CF6-80C2D1F engines.

25. On or around 5:15 p.m. on November 4, 2025, UPS MD-11 taxied from UPS Worldport to the runway at Louisville Muhammad Ali International Airport, laden with 220,000 pounds of jet fuel for its scheduled flight to Hawaii.

26. UPS Worldport is Defendant UPS's main global air hub. It is a 5.2 million square-foot global facility where 12,000 employees process more than 2,000,0000 packages each day. It houses two 275,000 square-foot aircraft hangars. The facility has capacity to house up to 125 aircraft at any given time, and sees more than 300 takeoffs and landings each day.

27. As UPS MD-11 accelerated down the runway, its left wing burst into flames. The engine from the plane's flaming left wing fell off as UPS MD-11 lifted off the ground.

28. The engine fell off the wing intact onto the right side of Runway 17R at the airfield. Parts of the nacelle, including the inlet and fan cowl, are also visible in photos and appear to have detached during the accident sequence.

29. Although UPS MD-11 lifted off of runway 17R, it barely made it farther than that. It crashed into the ground and several offsite structures south of the airport.



30. The crash of UPS MD-11 acted like a bomb, igniting 220,000 pounds of jet fuel, as well as combustible materials in surrounding locations. These combustibles included oils located at a petroleum recycling company nearby.



31. Multiple explosions, and massive plumes of fire and smoke burst from the plane and the structures it hit, causing multiple deaths, personal injuries, and massive property damage.

32. More than half a mile was covered in a fiery inferno. According to U.S. Rep. Morgan McGarvey, "The skies over Louisville looked apocalyptic last night" and the area was covered in "burned and mangled wreckage beyond anything I've ever seen. The smells, the sights, these are things that are not going to escape us when we close our eyes tonight".



33. More than 12 unfortunate souls, including a child, were killed when the aircraft fell out of the sky into a fiery inferno.

34. The remains of UPS MD-11 are now strewn across a half mile area. According to the NTSB, "there are a lot of different parts of this airplane in a lot of different places".

35. Defendant Boeing's MD-11 Aircraft and Defendant GE's CF6 Engines both have a history of catastrophic failures.

36. Defendant Boeing's MD-11 has the second-worst safety record of any commercial aircraft still in service. In 2009, two MD-11's suffered major crashes, including a fatal crash involving a FedEx MD-11 in Tokyo.

37. Upon information and belief, similar defects in Defendant Boeing's MD-11 caused or substantially contributed to the November 4, 2025 crash of UPS MD-11, as well as the resulting deaths, personal injuries, property damages, and other losses suffered by Plaintiffs and Class Members.

38. In the alternative, Defendant UPS's negligent conversion of UPS MD-11 to an MD-11F caused or substantially contributed to the November 4, 2025 crash of UPS MD-11, as well as the resulting deaths, personal injuries, property damages, and other losses suffered by Plaintiffs and Class Members.

39. Defendant GE's CF6 engines have similarly been involved in numerous catastrophic incidents.

40. In 2016, American Airlines Flight 383, a Boeing 767, experienced an uncontained failure of a CF6 engine and fire during takeoff in Chicago. The right engine suffered a sudden rupture of its stage-two disk, and the disk separated into two pieces, the smaller of which pierced

7

the wing's fuel tank and then flew nearly 3,000 feet, falling through the roof of a UPS facility and coming to rest on the building's floor. 21 people were injured during the ensuing evacuation.

41. In 1989, a CF6 engine caused United Airlines Flight 232, a DC-10, to crash land in Sioux City, Iowa. A CF6 fan disk separated from the engine and damaged all three hydraulic systems. The DC-10 flew with no hydraulic power until it crash-landed at the airport. 112 people died.

42. In 1979, a CF6 engine fell off an American Airlines jet as it was departing Chicago's O'Hare Airport, killing 273 people. NTSB attributed the crash to improper engine maintenance.

43. Upon information and belief, similar defects in Defendant GE's CF6 engines caused or substantially contributed to the November 4, 2025 crash of UPS MD-11, as well as the resulting deaths, personal injuries, property damages, and other losses suffered by Plaintiffs and Class Members.

44. UPS MD-11 had recently been in heavy maintenance. It had only been back in the sky for a few weeks prior to exploding in Louisville. The Aircraft was stranded in San Antonio from September 3 to October 18, 2025 due to emergency repairs to a cracked center wing upper fuel tank.

45. During that time, UPS MD-11 was grounded due to a crack in part of its top fuselage and corrosion in part of its lower fuselage. There were issues discovered in the fuselage, main, longeron, and stringer of the plane. Longerons are metal rods that run from the nose of the plane to the tail. Stringers are smaller rods running with the longerons that help create the main interior body of the plane. There was also corrosion in the cargo bilge of the plane.

46. Upon information and belief, Defendants UPS, GE and Boeing jointly maintained UPS MD-11 at all relevant times.

47. Upon information and belief, Defendants UPS, GE and Boeing's joint failures to properly maintain UPS MD-11 caused or substantially contributed to the November 4, 2025 crash of UPS MD-11, as well as the resulting deaths, personal injuries, property damages, and other losses suffered by Plaintiffs and Class Members.

48. Upon information and belief, Defendant UPS's negligent operation of UPS MD-11 also caused or substantially contributed to the November 4, 2025 crash of UPS MD-11, as well as the resulting deaths, personal injuries, property damages, and other losses suffered by Plaintiffs and Class Members.

## CLASS ALLEGATIONS

49. Plaintiffs seek relief on behalf of himself and as representative of all others who are similarly situated. Pursuant to Fed. R. Civ. P. Rule 23(a), (b)(2), (b)(3) and (c)(4), Plaintiffs seek certification of a class defined as follows:

> **All persons who resided, worked, or owned property within 5 miles of UPS Worldport (the "Class Zone") and suffered personal injury, death, property damage, loss of use and enjoyment, business interruption, lost business revenues, lost wages or emotional distress as a result of the crash of UPS MD-11 of November 4, 2025**

50. "Person" means an individual, corporation, company, partnership, limited liability company, joint venture, association, trust, or other entity.

51. Excluded from the Class are Defendants and any of their affiliates, parents or subsidiaries; all employees of Defendants; all persons who make a timely election to be excluded from the Class; government entities; and the judges to whom this case is assigned, their immediate families, and court staff.

52. Plaintiffs hereby reserve the right to amend or modify the class definition with greater specificity or subclassing after having had an opportunity to conduct discovery.

53. The proposed Class meets the criteria for certification under Rule 23(a), (b)(2), (b)(3) and (c)(4).

54. **Numerosity. Fed. R. Civ. P. 23(a)(1).** Consistent with Rule 23(a)(1), the members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical. While the exact number of Class Members is unknown to Plaintiffs at this time, the proposed Class includes hundreds of individuals who were unlawfully injured, damaged, or inconvenienced by Defendants' Airplane Crash. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

55. **Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3).** Consistent with Rule 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual Class members. The common questions include:

    a. Whether Defendants' negligently, recklessly, intentionally or otherwise tortiously designed, manufactured, operated, or maintained UPS MD-11 or its engines;

    b. Whether Defendants owed a duty of care to Plaintiffs and the Class;

    c. Whether the duty of care owed to the Class included the duty to protect Plaintiffs and the Class against unreasonable harm resulting from crashing Airplanes;

   d.  Whether Defendants breached their duty to warn Plaintiffs and the Class of and protect Plaintiffs and the Class from the health risks and consequences of crashing Airplanes;

   e.  Whether Plaintiffs and the Class are entitled to relief and the nature of that relief.

56. **Typicality. Fed. R. Civ. P. 23(a)(3).** Consistent with Rule 23(a)(3), Plaintiffs' claims are typical of those of the putative Class Members.  Plaintiffs reside or work in the vicinity of the Defendants' Airplane crash, and bring claims based upon the same legal theories as those of the other Class Members.

57. Plaintiffs and the other Class Members sustained damages as a direct and proximate result of the same wrongful acts or omissions in which Defendants engaged.

58. Plaintiffs' damages and injuries are akin to those of Class Members, and Plaintiffs seek relief consistent with the relief of Class Members.

59. **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Rule 23(a)(4), Plaintiffs are adequate representatives of the Class because Plaintiffs are members of the Class and is committed to pursuing this matter against Defendants to obtain relief for the Class.  Plaintiffs have no conflicts of interest with the Class. Plaintiffs' Counsel are competent and experienced in litigating class actions, including environmental litigation. Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the interests of Class Members.

60. **Superiority. Fed. R. Civ. P. 23(b)(3).**  Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even

when damages to individual plaintiffs may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiffs and the Class, while important to them, are relatively small compared to the burden and expense required to individually litigate their claims against Defendants. Thus, individual litigation to redress Defendants' wrongful conduct would be impracticable. Individual litigation by each Class member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

61. **Injunctive and Declaratory Relief.** Class certification is also appropriate under Rule 23(b)(2) and (c). Defendants, through their uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

62. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

63. Finally, all members of the proposed Class are readily ascertainable as they are all current or former residents of defined tracts. Class Members can be identified, and their contact information ascertained for the purpose of providing notice to the Class.

## COUNT I—NEGLIGENCE

64. Plaintiffs repeat, reallege, and incorporate by reference the allegations contained hereinabove as if set forth herein.

65. Each Defendant owed Plaintiffs and Class Members a duty to operate their enterprise in a manner which would not cause Plaintiffs and Class Members injury or harm.

66. Specifically,

   a. Defendant Boeing owed Plaintiffs and Class Members a duty to design, manufacture and maintain airworthy aircraft.

   b. Defendant GE owed Plaintiffs and Class Members a duty to design, manufacture and maintain airworthy engines.

   c. Defendant UPS owed Plaintiffs and Class Members a duty to operate and maintain airworthy aircraft, and to properly train and equip its air crew and aircraft.

67. Defendants each negligently breached their duty of care by causing the left wing of UPS MD-11 to catch on fire during takeoff, jettison its engine, and crash into neighboring properties.

68. Defendants each owed Plaintiffs and Class Members a duty of reasonable care and preventing unreasonable harm commensurate with the risk of manufacturing, maintaining and/or operating aircraft and aircraft engines.

69. Because of the likelihood of catastrophic harm to individuals and properties, Defendants each had a duty to design, manufacture, maintain, and/or operate aircraft or aircraft engines in a manner which would prevent aircraft and aircraft engines from failing, crashing, exploding, and from causing damage in nearby communities.

70. Defendants each negligently breached their duty of reasonable care and preventing unreasonable harm by, among other things:

   a. Causing a catastrophic engine failure on UPS MD-11;

   b. Causing a catastrophic failure to launch UPS MD-11;

  c. Failing to employ safe methods to adequately design, manufacture, maintain and/or operate UPS MD-11 to ensure that catastrophic failures and crashes did not occur;

  d. Failing to employ safe methods to adequately design, manufacture, maintain and/or operate the CF6 engine on UPS MD-11 to ensure that catastrophic failures and crashes did not occur;

  e. Failing to ensure that flight crews and maintenance crews assigned to UPS MD-11 were adequately supervised, trained, and instructed;

  f. Failing to utilize corporate policies and procedures that would prevent ignitions, explosions, and aircraft crashes from happening.

71. As a direct and proximate result of Defendants' negligence, Plaintiffs and Class Members were significantly harmed, and have suffered injury, discomfort, inconvenience, loss of use and enjoyment of property, emotional distress, business interruption, revenue losses, lost wages and damages relating to the repair and remediation of their property.

72. Defendants' conduct as alleged herein shows that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentional disregard for Plaintiffs' rights so as to warrant the imposition of punitive damages

## **COUNT II—TRESPASS**

73. Plaintiffs repeat, reallege, and incorporate by reference the allegations contained hereinabove as if set forth herein.

74. Defendants, through their activities alleged herein, allowed UPS MD-11 to crash onto and enter Plaintiffs' property. They intentionally, knowingly, and negligently caused UPS MD-11 to crash and discharge debris and toxic soot onto the real property of Plaintiffs and Class Members.

75. At all times, Defendants' conduct displayed indifference to and disregard for Plaintiffs' rights to their land.

76. Defendants' intentional, knowing, and negligent crash of UPS MD-11 discharge of debris and toxic soot into Plaintiffs' and Class Members' property has interfered with the rights of Plaintiffs to use and enjoy their property and constitutes trespass and continuing trespass. Defendants trespass has substantially impaired Plaintiffs' rights of use and enjoyment of their property and has caused Plaintiffs to presently suffer, and continue suffering in the future, injury, discomfort, inconvenience, loss of use and enjoyment of property, emotional distress, business interruption, revenue losses, lost wages and damages relating to the repair and remediation of their property.

77. Defendants' conduct as alleged herein shows that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentional disregard for Plaintiffs' rights so as to warrant the imposition of punitive damages.

## COUNT III—WILLFUL & WANTON CONDUCT

78. Plaintiffs repeat, reallege, and incorporate by reference the allegations contained hereinabove as if set forth herein.

79. At all times relevant, each Defendant owed a duty to refrain from willful and wanton conduct and/or conduct which exhibited an utter indifference and/or conscious disregard to the health, safety, and well-being of Plaintiffs and those living and working in areas near global air transportation hubs.

80. Defendants were at all relevant times aware that their failures to adequately design, manufacture, maintain and operate aircraft or aircraft engines could result in extreme physical harm to individuals in communities surrounding its global air transportation hubs.

81. Defendants were at all relevant times aware that the catastrophic failure, ignition, and release of aircraft engines, or crashing of aircraft would result in extreme distress and physical harm to individuals in communities surrounding global air transportation hubs.

82. Notwithstanding its duty, Defendants each breached their duty by, among other things:

83.
   a. Causing a catastrophic engine failure on UPS MD-11;
   b. Causing a catastrophic failure to launch UPS MD-11;
   c. Failing to employ safe methods to adequately design, manufacture, maintain and/or operate UPS MD-11 to ensure that catastrophic failures and crashes did not occur;
   d. Failing to employ safe methods to adequately design, manufacture, maintain and/or operate the CF6 engine on UPS MD-11 to ensure that catastrophic failures and crashes did not occur;
   e. Failing to ensure that flight crews and maintenance crews assigned to UPS MD-11 were adequately supervised, trained, and instructed;
   f. Failing to utilize corporate policies and procedures that would prevent ignitions, explosions, and aircraft crashes from happening;

84. Defendants' failures in these and other respects in the face of actual knowledge regarding the risks of unreasonable harm constitute willful, wanton, reckless and outrageous conduct, and demonstrates an utter indifference and/or conscious disregard to the health, safety, and well-being of Plaintiffs and Class Members

85. As a direct and proximate result of each Defendant's willful and wanton conduct, Plaintiffs and Class Members suffered significant injury, discomfort, inconvenience, loss of use and enjoyment of property, emotional distress, business interruption, revenue losses, lost wages and damages relating to the repair and remediation of their property.

86. Defendants' conduct as alleged herein shows that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentional disregard for Plaintiffs' rights so as to warrant the imposition of punitive damages.

## COUNT IV—PRIVATE NUISANCE

87. Plaintiffs repeat, reallege, and incorporate by reference the allegations contained hereinabove as if set forth herein.

88. Defendants have unreasonably contaminated and harmed real property within Jefferson County, Kentucky.

89. Defendants unreasonable use of their property and their unreasonable ignition and explosion of UPS MD-11 has unreasonably interfered with the rights of Plaintiffs and Class Members to use and enjoy their property, causing them to suffer significant injury, discomfort, inconvenience, loss of use and enjoyment of property, emotional distress, business interruption, revenue losses, lost wages and damages relating to the repair and remediation of their property.

90. Plaintiffs, unlike the public generally, have suffered specific injuries as a result of Defendants' tortious conduct, including the deposition of debris and toxic soot of their property.

91. Defendants improper deposition of debris and toxic soot onto Plaintiffs' and Class Members' property constitutes a private nuisance. This nuisance has directly and proximately caused Plaintiffs to presently suffer, and continue suffering in the future, significant injury, discomfort, inconvenience, loss of use and enjoyment of property, emotional distress, business

interruption, revenue losses, lost wages and damages relating to the repair and remediation of their property.

92. Defendants' conduct as alleged herein shows that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentional disregard for Plaintiffs' rights so as to warrant the imposition of punitive damages.

### COUNT V—NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

93. Plaintiffs repeat, reallege, and incorporate by reference the allegations contained hereinabove as if set forth herein.

94. Defendants owed Plaintiffs a duty of care to protect them from harm arising from crashing and exploding aircraft.

95. Defendants breached the duty of care owed to Plaintiffs in the manners described hereinabove.

96. As a direct and proximate result of the actions of Defendants, Plaintiffs suffered severe and serious emotional injury that a reasonable person, normally constituted, would not be expected to endure

### REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all Class Members proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

a. For an Order certifying the Class, as defined above, and appointing Plaintiffs and their Counsel to represent the Class;

b. For damages, including compensatory, punitive, and exemplary damages, in an amount determined to be just and reasonable;

c. For an award of attorney's fees, costs, and litigation expenses, as allowed by law;

    d.      For prejudgment interest on all amounts awarded;

    e.      For injunctive and declaratory relief, as allowed by law and

    f.      Such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial on all issues so triable.

**FILED:** Dated November 6, 2025.

                                      Respectfully submitted,

                                      /s/ T. Michael Morgan
                                      T. MICHAEL MORGAN (KY Bar #94856)
                                      MORGAN & MORGAN, P.A.
                                      209 E Main St, Suite 400,
                                      Louisville, KY 40202
                                      P: (407) 418-2031
                                      F: (407) 245-3384
                                      mmorgan@forthepeople.com

                                      RENE F. ROCHA*
                                      LA Bar No. 34411
                                      MORGAN & MORGAN, COMPLEX
                                      LITIGATION GROUP
                                      1100 Poydras Street, Suite 2900
                                      New Orleans, LA 70163
                                      rrocha@ForThePeople.com
                                      P: (954) 318-0268
                                      F: (954) 327-3018

                                      TANNER H. SHULTZ
                                      Morgan & Morgan, Kentucky PLLC
                                      250 West Main Street, Suite 2100
                                      Lexington, Kentucky 40507
                                      P: (859) 469-7946
                                      F: (859) 367-6146
                                      tshultz@forthepeople.com

                                      RONALD JOHNSON
                                      Hendy Johnson Vaughn PSC
                                      600 West Main Street, Suite 100
                                      Lexington, Kentucky 40202

P: (859) 578-4444
rjohnson@justicestartshere.com

*Attorneys for the Plaintiffs and
the Putative Class
*Pro Hac Vice Pending*